UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
BISNOW LLC,                                                     Case No. 20-cv-3441 (PAE) (SLC)

                                    *Plaintiff*,

                    – against –

THOMAS LOPEZ-PIERRE,

                                    *Defendant*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## <u>DECLARATION OF CHRIS BUSHNELL</u>

I, **CHRIS BUSHNELL**, hereby declare under penalty of perjury as follows:

1.      I am the Director of the Northeast for Plaintiff Bisnow LLC ("Bisnow"). As such, I have personal knowledge of the matters stated herein.

2.      I submit this Declaration in order to provide the Court with evidence about specific economic losses that Bisnow suffered as a result of the actions of Defendant Thomas Lopez-Pierre ("Defendant" or "Lopez-Pierre"). Tyler Fisher is separately submitting a declaration detailing the damages inflicted upon Bisnow's brand as a result of Defendant's misconduct.

3.      In the Fall of 2019, Lopez-Pierre began a campaign to, as he described it, "kill Bisnow's brand" by sending emails to our employees and sponsors falsely accusing Bisnow of being a "racist" and "sexist" company, and threatening to tarnish our business associates' brands if they continued to do business with us, while making thinly veiled threats of violence by, for example, threatening to send gang members to the homes of people who did not end their business relationship with us.

4.      In addition to the general damage Lopez-Pierre is causing to Bisnow's brand, we also suffered the specific economic losses I detail below. Because Bisnow's costs are fixed, this lost revenue would all be profit except for a standard 10% commission.

<u>Avison Young</u>

5.      Prior to 2020, Avison Young advertised with Bisnow every year since 2013. On October 29, 2019, I had a telephonic discussion with Gail Donovan, Senior Director of Marketing, Tri-State, for Avison Young.  A true and accurate copy of an internal Bisnow record of this call is annexed hereto as Exhibit A.  During this discussion, Ms. Donovan committed Avison Young to sponsoring the following 10 Bisnow events:

     i.      NYC Future of Construction & Development,

     ii.      NYC Legislative Forecast: Rent Stabilization & Climate Mobilization Act,

     iii.      NYC workplace (full-day),

     iv.      NYC Industrial & Logistics (full-day) – Long Island and New Jersey office wanted to sponsor,

     v.      WC/FF SOM,

     vi.      NYC Affordable Housing,

     vii.      NYC National Finance (full-day),

     viii.      NYC Life Sciences,

     ix.      NYC state of the market (full-day), and

     x.      2021 Forecast.

6.      Based on our pricing in effect for 2020, Bisnow stood to receive $55,920 in revenue from Avison Young for these events.[1]

7.      On November 4, 2019, I sent Ms. Donovan an email confirming her commitment to the above events.  (Exhibit B hereto is a true and accurate copy of my November 4, 2019 email to Ms. Donovan).

8.      However, after Lopez-Pierre targeted Avison Young as a Bisnow sponsor, it pulled out of its entire 2020 slate of events and ceased doing business with us.  (*See, e.g.,* Exhibit C hereto, a true and accurate copy of Ms. Donovan's November 13, 2019 email cancelling Avison Young's $4,800 panelist sponsorship of an event scheduled for December 4, 2019, following receipt of an email from Lopez-Pierre dated November 12, 2019). As the Court can see, Ms. Donovan specifically stated that the reason for the cancellation was the threat of a confrontation with Lopez-Pierre that could tarnish Avison Young's own brand.

9.      Thereafter, on November 21, 2019, I had a telephonic conference with Ms. Donovan and others.  (*See* Exhibit D hereto, a true and accurate copy of an internal Bisnow record confirming this call.  I made this record in the ordinary course of my duties at Bisnow contemporaneously with the call and it was part of my duties to be accurate in making this record). During the telephone conference reflected in this call, Ms. Donovan told me that in light of the threat posed by Lopez-Pierre, Avison Young was pulling out of its entire commitment for 2020, that I identified above in Paragraph 5, thereby resulting in a loss of $57,440 in revenue for 2020.

---

[1]      I previously submitted a declaration to the Court stating this anticipated revenue to be $57,440. That figure was incorrect, and the lesser figure of $55,920 is correct.

10.     Notably, the December 4, 2019 event that Ms. Donovan cancelled in her November 13, 2019 email (*see* Exhibit C hereto) was Avison Young's last Bisnow event for 2019.  In an effort to preserve our relationship, Bisnow reallocated the $4,800 fee for the December 4, 2019 event to provide Avison Young with digital ads, which we would otherwise have sold for $16,500, resulting in a revenue loss of $21,300, *i.e.*, the $4,800 panelist fee plus the $16,500 in lost revenue for digital ads that Bisnow otherwise would have sold.  (*See* Exhibit E hereto, a true and accurate copy of the contract reallocating this revenue into digital ads).  As the Court can see, I confirmed the lost revenue on the first and last pages of the new contract.  (*See* Exhibit E hereto at pp. 1 and 6).  I had to make this notation because otherwise the contract never would have been acceptable to Bisnow's senior management.

11.     Moreover, Bisnow anticipated receiving income from Avison Young on a going forward basis.  Indeed, even using the revenue we lost for 2020 as a baseline, with no adjustments made for growth in sales, Bisnow will have lost $355,520 in revenue from Avison Young through the end of 2025.  (A spreadsheet showing these projections for Avison Young and two other Bisnow sponsors discussed *infra*, is annexed hereto as Exhibit F).  For the Court's convenience, I have broken out the anticipated revenue by year in the event that the Court deems it appropriate to award Bisnow damages for some or all of these 5-years worth of projected revenue.

Emerald Creek

12.     On February 27, 2020, Emerald Creek committed to spending $30,300 on a Bisnow campaign package for 2020.   (A true and accurate copy of this contract is annexed hereto as Exhibit G).

13.     In  April 2020, Lopez-Pierre sent an email blast claiming Mark Behiri, Managing Partner and Co-Founder of Emerald Creek Capital, was a racist for agreeing to participate in a Bisnow webinar.

14.     After Lopez-Pierre sent this email, Mr. Behiri requested a full refund of the $30,300 package it had agreed to, resulting in a $30,300 loss to Bisnow for 2020.

15.     There can be no doubt that Emerald Creek ceased doing business with Bisnow as a result of Lopez-Pierre's conduct.  In this regard, Exhibit H hereto is a true and accurate copy of an email dated October 28, 2020 that I received from Rebecca Jurbala, Head of Marketing for Emerald Creek, in which Ms. Jurbala writes that "[w]e stopped doing business with Bisnow because we received emails from Thomas Lopez Pierre accusing Bisnow of inappropriate conduct."

16.     Moreover, in addition to the $30,300 loss for 2020, Bisnow anticipated receiving income from Emerald Creek on a going forward basis.  Indeed, even using the revenue we lost for 2020 as a baseline, with no adjustments made for growth in sales, Bisnow lost $181,800 in revenue from Emerald Creek through the end of 2025. (*See* Exhibit F hereto, the spreadsheet showing these projections).   For the Court's convenience, I have broken out the anticipated revenue by year in the event that the Court deems it appropriate to award Bisnow damages for some or all of these 5-years worth of projected revenue.

Ariel Property Advisors

17.     Michael A. Tortorici, one of the founding members of Ariel Property Advisors ("Ariel"), was one of Lopez-Pierre's early targets.  As a result, Ariel decided not to participate in any 2020 Bisnow events.  (*See* Exhibit I hereto, a true and accurate copy of an email chain between, *inter alia*, Ivan Petrovic from Ariel and me in which Mr. Petrovic confirms on page 7 of the Exhibit that Ariel had decided not to commit for 2020).  An average of Ariel spending with Bisnow from 2013 through the end of 2019 total $22,707.14.  (*See* Exhibit F).   It is reasonable to conclude that Bisnow would have received $22,07.14 in revenue from Ariel for 2020 if it were not for Defendant's actionable conduct, i.e., the average revenue for the prior seven years.  (In my earlier declaration filed in this Court (see Doc. No. 16), I had concluded that Bisnow's lost revenue from Ariel for 2020 was based on consistent annual payments between $20,000 to $25,000.  However, this calculation above which is based on averages of revenue over a 7-year period is the correct one).

18.     As a result, Bisnow lost $22,707.14 for 2020.  Moreover, in addition to the loss for 2020, Bisnow anticipated receiving income from Ariel on a going forward basis.  Indeed, even using the revenue we lost for 2020 as a baseline, with no adjustments made for growth in sales, Bisnow lost $136,242.84 in revenue from Ariel through the end of 2025.  (*See* Exhibit F hereto, the spreadsheet showing these projections).  For the Court's convenience, I have broken out the anticipated revenue by year in the event that the Court deems it appropriate to award Bisnow damages for some or all of these 5-years' worth of projected revenue.

Additional Damages

19.     We have also identified an annual loss in contracts caused by Defendant's actions for customers within the New York area who have received the emails, which total $236,180.  For

the same reasons articulated in Mr. Fisher's accompanying Declaration about the threats posed by

Lopez-Pierre, I am not going to identify these customers further.

      I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.  Executed this 29th day of October, 2020, in New York, New York.

 

 

                                      _____
                                         CHRIS BUSHNELL