# EXHIBIT G



# ADVERTISING & SPONSORSHIP ORDER
Emerald Creek Capital

123 William Street
Floor 15
New York, NY 10038

| Item | Information |
|---|---|
| PO Number | |
| Bisnow Sales Rep | Chris Bushnell |
| Sale Closed Date | February 29, 2020 |
| Company | Emerald Creek Capital |
| Agency | |
| Marketing Contact Name | Mike Cleaver |
| Marketing Contact Phone Number | |
| Marketing Contact Email | |
| Campaign Start Date | March 12, 2020 |
| Campaign End Date | October 1, 2020 |
| Campaign Notes | N/A |

| Bisnow Products | | | | | | |
|---|---|---|---|---|---|---|
| Product / Package | Publication / Event | Target Publish Date / Event Date | Notes | Quantity / Impressions | Rate | Amount |
| Panelist | Capital Markets & CRE Finance - Washington DC'20 - 4208 | March 26, 2020 | | 1.00 | $5,900.00 | $5,900.00 |
| Custom Article | Custom Content National | April 1, 2020 | | 1.00 | $5,000.00 | $5,000.00 |
| Morning Brief - Sponsored Link | DC Morning Brief | April 3, 2020 | | 1.00 | $675.00 | $675.00 |

| Morning Brief - Sponsored Link | Dallas/Fort Worth Morning Brief | April 8, 2020 | | 1.00 | $675.00 | $675.00 |
| --- | --- | --- | --- | --- | --- | --- |
| Morning Brief - Sponsored Link | DC Morning Brief | April 8, 2020 | | 1.00 | $675.00 | $675.00 |
| Morning Brief - Sponsored Link | Dallas/Fort Worth Morning Brief | April 10, 2020 | | 1.00 | $675.00 | $675.00 |
| Morning Brief - Sponsored Link | DC Morning Brief | April 17, 2020 | | 1.00 | $675.00 | $675.00 |
| Morning Brief - Sponsored Link | Dallas/Fort Worth Morning Brief | April 23, 2020 | | 1.00 | $675.00 | $675.00 |
| Morning Brief - Sponsored Link | DC Morning Brief | April 24, 2020 | | 1.00 | $675.00 | $675.00 |
| Morning Brief - Sponsored Link | Dallas/Fort Worth Morning Brief | April 29, 2020 | | 1.00 | $675.00 | $675.00 |
| Morning Brief - Sponsored Link | Dallas/Fort Worth Morning Brief | April 30, 2020 | | 1.00 | $675.00 | $675.00 |
| Morning Brief - Sponsored Link | DC Morning Brief | April 30, 2020 | | 1.00 | $675.00 | $675.00 |
| Booth | Dallas State of the Market - Dallas'20 - 4432 | June 1, 2020 | Value Add - Approved by Tyler | 1.00 | $0.00 | $0.00 |
| Panelist | New England Multifamily - Boston'20 - 4272 | August 1, 2020 | | 1.00 | $5,900.00 | $5,900.00 |
| Morning Brief - Sponsored Link | Boston Morning Brief | August 3, 2020 | | 1.00 | $675.00 | $675.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Morning Brief - Sponsored Link | Boston Morning Brief | August 7, 2020 | | 1.00 | $675.00 | $675.00 |
| Morning Brief - Sponsored Link | Boston Morning Brief | August 19, 2020 | | 1.00 | $675.00 | $675.00 |
| Morning Brief - Sponsored Link | Boston Morning Brief | August 24, 2020 | | 1.00 | $675.00 | $675.00 |
| Morning Brief - Sponsored Link | Boston Morning Brief | August 31, 2020 | | 1.00 | $675.00 | $675.00 |
| Booth | Finance Summit - New York'20 - 4331 | September 1, 2020 | Value Add - Approved by Tyler | 1.00 | $0.00 | $0.00 |
| Morning Brief - Sponsored Link | New York Morning Brief | September 2, 2020 | | 1.00 | $675.00 | $675.00 |
| Morning Brief - Sponsored Link | New York Morning Brief | September 9, 2020 | | 1.00 | $675.00 | $675.00 |
| Morning Brief - Sponsored Link | New York Morning Brief | September 17, 2020 | | 1.00 | $675.00 | $675.00 |
| Morning Brief - Sponsored Link | New York Morning Brief | September 24, 2020 | | 1.00 | $675.00 | $675.00 |
| Morning Brief - Sponsored Link | New York Morning Brief | September 30, 2020 | | 1.00 | $675.00 | $675.00 |
| Booth | Multifamily - Philadelphia'20 - 4289 | October 1, 2020 | | 1.00 | $0.00 | $0.00 |

Sponsorship refers to Event marketing and Event sponsorships.  Advertising refers to Display Advertising and Custom Content, which may also be referred to as Custom Articles, Creative Labs, or Native Advertising.

**TERMS AND CONDITIONS**

These terms and conditions ("Terms and Conditions") and the above Bisnow Products ("Order") between Bisnow, LLC ("Bisnow") and the Company identified in the Order (each, a "Party" and together, the "Parties") shall govern the performance and obligations of the Parties related to the Order (these Terms and Conditions and the Order are together the "Agreement"). Capitalized terms used and not otherwise defined in these Terms and Conditions shall have the meaning ascribed to such terms in the Order.

**ADVERTISING**

Bisnow shall render the Advertising services provided for on the Order and on Schedule A. Bisnow reserves the right to alter any scheduled advertising, unless otherwise specified in Schedule A or provided for by this Agreement. Advertising units and their specified publish dates included in this Agreement are held for 48 business hours upon delivery of this Agreement to Company by Bisnow. If a signed Agreement is returned by Customer after such period, and the original advertising units are no longer available, Bisnow may substitute alternate dates and/or advertising units within the specified region or publication type.

All Company Advertising materials and content must be reviewed by Bisnow and may be rejected by Bisnow at its discretion. If Company cannot in good faith cure Bisnow's reason for rejection within a reasonable time (subject to all applicable deadlines, but at a minimum, 48 business hours before the applicable publish date), at Bisnow's discretion, any rate discount may be forfeited, the piece may or may not be published and Company may be charged in full, regardless of whether or not the piece is published. Custom Content may be (i) edited by Bisnow in its discretion and (ii) clearly labeled by Bisnow as "sponsored." Bisnow reserves the right to edit text advertisements for spelling and grammar and to comply with Bisnow's style requirements.

Company will send Bisnow any requisite, correctly sized Display Advertising creative materials at least five business days before the scheduled publish date. Company's failure to provide Bisnow with Display Advertising creative materials before such time will release Bisnow from any and all obligations to publish such Display Advertising and at Bisnow's discretion, any rate discount may be forfeited and Company may be charged in full, regardless of whether or not the piece is published.

If Custom Content is included in the advertising campaign, by participating in Bisnow's Custom Content program, Company agrees to the following: (1) Bisnow will contact Company via email to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ to initiate the Advertising campaign; (2) Bisnow will outline scheduled publication date of every piece included in the campaign, necessary deadlines for sending requisite materials for individual pieces and the standard Bisnow publishing process which includes deadlines for edits by Company; (3) To ensure content meets Bisnow quality standards, the time frame between publishing of an article and Bisnow's receipt of requisite materials for the article cannot be less than four weeks; (4) Bisnow will have final say on all non-fact based comments and suggestions submitted by Company and the published piece may deviate slightly from the draft approved by Company; (5) Company may revise the publication date, but must provide, at minimum, 30 days' notice via email when changing a publication date; (6) The revised publication date cannot fall more than 30 days after the Campaign End Date; (7) Company may repurpose Custom Content created by Bisnow, but Company is required at all times to denote Bisnow as the author; (8) If Company is unresponsive or otherwise fails to fulfill its obligations in the timelines provided by Bisnow, Company shall forfeit its right to either use the piece or make edits, at Bisnow's discretion the piece may or may not be published, any rate discount may be forfeited and Company may be charged in full, regardless of whether or not the piece is published.

Subject to the terms of this Agreement, all Advertising provided by Company or developed by Bisnow will be published by Bisnow on or before the Campaign End Date. If Bisnow delays publication due to unforeseen circumstances, a new Campaign End Date will be provided to Company.

Company may cancel Advertising for any reason by providing Bisnow a cancellation notice via email. Upon cancellation, Company will be responsible for payment of advertisements published or scheduled to be published prior to and 60 days following the date of the cancellation notice, with the exception of advertisements not published due to Bisnow delaying publications or related events. In the event of Company's cancellation of any portion of any Advertising order or Company's failure to provide Bisnow with required materials and/or edits within specified timelines, any rate discount may be retroactively forfeited. This includes discounts applied to previously published advertisements.

Bisnow makes no guarantees, representations or warranties with regard to the results, effectiveness or success of any Advertising or Advertising campaign. In the event of an error or omission in and advertisement caused by Bisnow's negligence, Bisnow's aggregate liability shall be limited to the amount of the advertisement.

**SPONSORSHIP**

Company will provide Sponsorship of the Event. Subject to the terms and conditions of this Agreement, Bisnow shall create, program, advertise, market, promote and manage the Event as described on the Order and Schedule A ("Event Activity").

Due to the inherent uncertainty of event production, attendees and speakers, Bisnow makes no guarantees, representations or warranties with regards to Event (i) attendance; (ii) panelist speaking time; (iii) venue; (iv) speaker drop-out; (v) ticket price; (vi) sponsorships; (vii) editorial content; and/or (viii) extent of marketing.

At its discretion Bisnow may, for any reason (i) cancel Company's Event Sponsorship, (ii) cancel the Event or (iii) reschedule the Event. If the Event is rescheduled, Bisnow will provide Company with reasonable notice of the new date. If Company cancels the Event Sponsorship fewer than 30 days prior to the Event Date, the amount payable to Bisnow with respect to the Sponsorship will not be refunded and Company will reimburse and indemnify Bisnow for all of Bisnow's liabilities, costs and expenses and all of Bisnow's lost revenue related to the Event. If Bisnow cancels Company's Event Sponsorship or cancels (and does not reschedule) the Event, Bisnow's

sole responsibility to Company will be (x) to notify Company of such cancellation; and (y) to refund amounts already paid to Bisnow by Company for the Event Sponsorship, unless both Parties agree in writing (email to suffice) to apply such amount to a future event. Company's failure to use the Event Sponsorship or otherwise unassigned sponsorships by Campaign End Date will release Bisnow from any and all obligations in this Agreement to provide Company with sponsorships. Company will be responsible for payment of all sponsorships.

**GENERAL**

As full compensation for the rights and/or services identified in the Order, Company will pay Bisnow the Total Campaign Price on the payment terms specified in the Order under Payment Terms and Authorization. Payment is due 30 days from the date of invoice. Discounts on Bisnow products, both digital and event based, are only valid on the entirety of the original agreed upon package. Company cannot convert or switch one Bisnow product into or for another Bisnow product without a new agreement signed by both Parties.

The term (the "Term") of this agreement shall commence on the date hereof and end on the Campaign End Date or Event date, as applicable.

Company hereby grants Bisnow a non-exclusive, non-transferable, non-sublicensable right and license to use trademarks, tradenames, and logo designs (collectively "Materials") of the Company and Company descriptions as necessary for Bisnow to provide the services contemplated by this Agreement. Bisnow hereby grants Company, a non-exclusive, non-transferable, non-sublicensable right and license to use Materials of Bisnow and Bisnow descriptions during the Term in its advertising, marketing, and promotional materials to identify and promote its association with Bisnow. If either Party is notified in writing (e-mail to suffice) by the other Party that any use of the other Party's Materials does not comply with the other Party's trademark usage guidelines, such Party shall promptly remedy the use to the reasonable satisfaction of the other Party. Neither Party shall use, register, or attempt to register in any jurisdiction any Material that is confusingly similar to or incorporates any of the other Party's Materials. All uses of a Party's Materials, and all goodwill associated therewith, shall inure solely to the benefit of such Party, and each Party shall retain all right, title, and interest in and to its respective Materials.

Company agrees to add Bisnow IP and email addresses to its email whitelist/sale-sender lists to ensure successful deliverability of emails, and agrees to update whitelisted IP and email addresses when requested by Bisnow to include future additions. Existing email addresses to be whitelisted include: ███████████████ and ███████████████; Existing IP addresses to be whitelisted include: 192.28.150.209, 167.89.15.115, 54.244.54.150 and 54.244.54.151.

During the Term, Bisnow and Company shall maintain insurance customarily secured for services to be provided by Bisnow under this Agreement.

If Bisnow's occupancy or use of all or a portion of real property, a premises or location (each, a "Location") for an Event is leased, licensed or otherwise allowed by Company, each of the Parties shall, at its own cost and expense, keep in force at all times during the term thereof, insurance covering the Location provided by responsible companies lawfully permitted to provide coverage at the Location. Such insurance coverage shall include (i) commercial general liability insurance, covering claims for personal injury, death or property damage occurring on, in or about the Location with usual and customary limits with respect to the Location, personal property and Bisnow's conduct of business at the Location and provide by endorsement that the other Party and its affiliates, directors, officers, agents and employees shall be included as additional insureds; and (ii) employers' liability and workers' compensation insurance to the extent required by law. Neither Party shall have any responsibility to the other Party or their respective agents, contractors, employees, customers or other invitees to the Location in the event of any damage to or theft or loss of any equipment or property of the other Party and the Party incurring such damage, theft, or loss shall look to its own insurance coverage (and to any self-insured portion of the damage, theft, or loss), if any, for recovery in the event of any such damage, theft, or loss.

Each Party represents and warrants to the other Party that: (i) it is duly organized, validly existing, and in good standing as a corporation or other entity as represented herein under the laws and regulations of its jurisdiction of incorporation, organization, or chartering; (ii) it has the full right, power, and authority to enter into this Agreement, to grant the rights and licenses granted hereunder, and to perform its obligations hereunder; (iii) the execution of this Agreement by its representative whose signature is set forth at the end hereof has been duly authorized by all necessary action of the Party; and (iv) when executed and delivered by both Parties, this Agreement will constitute the legal, valid, and binding obligation of such Party, enforceable against such Party in accordance with its terms. Each Party further represents that the use of the other Party's Materials, when used in accordance with this Agreement will not infringe, misappropriate, or otherwise violate any rights of any third party. In the event an order is placed by an advertising or other agent of Company ("Agency") on behalf of Company, such Agency warrants and represents that it has full right and authority to place such and that all legal obligations arising out of the placement of the advertisement will be binding on both Company and Agency.

Bisnow shall indemnify and hold Company and its affiliates, directors, officers, agents and employees harmless from and against any and all liabilities, claims, suits, damages, judgments, costs and expenses, including reasonable attorneys' fees ("Claims") arising out of third party Claims relating to Bisnow's gross negligence or willful misconduct in connection with (i) the Event Activity; (ii) Advertising (to the extent the content originated from Bisnow or its employees or agents); or (iii) Bisnow's material breach of any representation, warranty, covenant, or obligation of Bisnow under this Agreement. This paragraph will survive the expiration or termination of this Agreement.

Company shall indemnify and hold Bisnow and its affiliates, directors, officers, agents and employees harmless from and against any and all Claims arising out of third party Claims relating to the Company's gross negligence or willful misconduct in connection with (i)

the Sponsorship (including, if applicable, events occurring or conditions existing at a Location); (ii) Advertising (to the extent the content originated from Company or its employees or agents); or (iii) Company's material breach of any representation, warranty, covenant, or obligation of Company under this Agreement. This paragraph will survive the expiration or termination of this Agreement.

BISNOW MAKES NO EXPRESS OR IMPLIED WARRANTY OR REPRESENTATION TO COMPANY THAT OPERATION OF ANY WEBSITE CONTAINING ADVERTISING WILL BE UNINTERRUPTED, HAVE FULL FUNCTIONALITY AT ALL TIMES, OR BE ERROR FREE. BISNOW WILL NOT BE LIABLE FOR CONSEQUENCES RESULTING FROM ANY WEBSITE INTERRUPTION OF SERVICE, MALFUNCTION OR ERROR. BISNOW MAKES NO EXPRESS OR IMPLIED WARRANTY OR REPRESENTATION TO COMPANY THAT ANY ADVERTISING OR OTHER COMMUNICATION (INCLUDING BY EMAIL) WILL BE RECEIVED BY THE INTENDED RECIPIENT OR RECEIVED BY THE INTENDED RECIPIENT IN ANY PARTICULAR TIME FRAME. Except as otherwise provided for in this Agreement, in no event shall either Party be liable to the other Party for any incidental, special, exemplary, consequential or other similar damages, including loss of income, profits, revenue or other economic loss, whether or not such Party has been advised of the possibility of such damages and whether any claim for recovery is based on theories of contract, warranty, tort or otherwise. Notwithstanding anything in this Agreement to the contrary, in no event will a Party's aggregate liability to the other Party not covered by insurance exceed the Total Campaign Price (if the Total Campaign Price is not specified, such aggregate liability not covered by insurance shall not exceed $50,000).

Neither Party will be liable or responsible to the other Party, or be deemed to have defaulted under or breached this Agreement, for any failure or delay in fulfilling or performing any term of this Agreement, when and to the extent such failure or delay is caused by any: (i) acts of God; (ii) flood, fire, or explosion; (iii) war, terrorism, invasion, riot, or other civil unrest; (iv) embargoes or blockades in effect on or after the date of this Agreement; (v) national or regional emergency; (vi) strikes, labor stoppages or slowdowns, or other industrial disturbances; (vii) passage of law or governmental order, rule, regulation, or direction, or any action taken by a governmental or public authority, including but not limited to imposing an embargo, export or import restriction, quota, or other restriction or prohibition; or (viii) national or regional shortage of adequate power, telecommunications, or transportation facilities (each of the foregoing, a "Force Majeure"), in each case, provided that (A) such event is outside the reasonable control of the affected Party; (B) the affected Party provides prompt notice to the other Party, stating the period of time the occurrence is expected to continue; and (C) the affected Party uses diligent efforts to end the failure or delay and minimize the effects of such Force Majeure.

Unless otherwise specified in this Agreement, email notice to Bisnow will be sent to the Bisnow Representative and email notice to Company will be sent to the Marketing Contact Email. The date of such notice will be the date the notice is transmitted.

The relationship between the Parties is that of independent contractors. Nothing contained in this Agreement shall be construed as creating any agency, partnership, joint venture, or other form of joint enterprise, employment, or fiduciary relationship between the parties, and neither Party shall have authority to contract for or bind the other Party in any manner whatsoever.

This Agreement, together with a written agreement for the use of a premises for an Event, if any, constitutes the entire agreement of the Parties with respect to the subject matter contained herein, and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to such subject matter. No amendment to or modification of this Agreement is effective unless it is in writing and signed by an authorized representative of each Party. Unless otherwise agreed to in writing by the Parties, the terms of this Agreement will supersede any agreement for the use of a premises for an Event.

This Agreement is for the sole benefit of the parties hereto and their respective successors and assigns and nothing herein, express or implied, is intended to or shall confer upon any other person any legal or equitable right, benefit, or remedy of any nature whatsoever, under or by reason of this Agreement.

This Agreement is governed by and construed in accordance with the internal laws of the State of New York without giving effect to any choice or conflict of law provision or rule that would require or permit the application of the laws of any jurisdiction other than those of the State of New York. Any legal suit, action, or proceeding arising out of or related to this Agreement or the licenses granted hereunder shall be instituted exclusively in the federal courts of the United States or the courts of the State of New York in each case located in the City of New York and County of New York, and each Party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action, or proceeding. Each Party irrevocably and unconditionally waives any right it may have to a trial by jury in respect of any legal action arising out of or relating to this Agreement or the transactions contemplated hereby.

<u>SCHEDULE A</u>

If any Product(s) / Package(s) in the Order that include "Raw Space" sponsorship, Company shall be responsible for providing an event space that meets the following specifications, subject to the approval of Bisnow.

1. 10,000 usable square feet
2. Working HVAC system
3. Working bathrooms
4. Working power / electricity
5. Access to sufficient parking for all attendees
6. Wifi (for full-day events)

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

This Agreement may be executed in counterparts, each of which is deemed an original, but all of which together are deemed to be one and the same agreement. A signed copy of this Agreement delivered by means of electronic transmission is deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

| **Payment Terms & Authorization** | |
| --- | --- |
| Accounts Payable Contact Name | Mike Cleaver |
| Accounts Payable Contact Phone | |
| Account Payable Contact Email | |
| **Total Campaign Price** | $30,300.00 |
| Trade Value (if applicable) | |
| Trade Details (if applicable) | |
| Billing Schedule | Billed Monthly Upon Delivery |
| Custom Billing Instructions (if any) | |

| | | | |
| --- | --- | --- | --- |
| Client Acceptance Signature: | *[signature]* | Date: | 2/27/2020 |
| Print Name/Title: | Mike Cleaver | | |
| Bisnow Rep Signature: | *Chris Bushnell* | Date: | 2/27/2020 |
| Print Name/Title: | Chris Bushnell | | |
| Email address: | | | |